

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00167-CV
_____

IN THE INTEREST OF C.C.L., A CHILD

On Appeal from the County Court at Law No. 2
Randall County, Texas
Trial Court No. 9188-L2, Honorable Jack M. Graham, Presiding

October 11, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, father[1] of C.C.L., appeals the trial court's order terminating his parental rights to his son and appointing the Texas Department of Family and Protective Services as managing conservator. The father asserts the evidence was insufficient to terminate his parental rights and his counsel provided him with ineffective assistance. We will affirm.

---

[1] Pursuant to rule 9.8 of the Texas Rules of Appellate Procedure, we will refer to appellant as "the father." *See* Tex. R. App. P. 9.8.

Background

C.C.L. was born December 9, 2011.  The Department removed C.C.L. from the hospital on December 12 after a drug test indicated he had methamphetamine in his system.   The mother admitted to using methamphetamine and marijuana while pregnant.[2]   C.C.L. was not left in the father's care because the father then had a pending criminal case for possession of a controlled substance.  He later plead guilty to that offense and was sentenced to twenty years in prison.

Analysis

Sufficiency of Evidence to Support Termination of Parental Rights

Standard of Review

In a case to terminate parental rights brought by the Department under Family Code § 161.001, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (West 2012); *In re C.H.,* 89 S.W.3d 17, 23 (Tex. 2002). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002); *see also Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985) (holding that, because termination of parental rights is complete, final, irrevocable and divests for all time the

---

[2] The mother's parental rights to C.C.L. also were terminated in the order under appeal, but she has not appealed the termination of her rights.

natural right of a parent, the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights) (*citing Santosky v. Kramer*, 455 U.S. 745, 747-48, 102 S. Ct. 1388, 1391-92, 71 L. Ed. 2d 599 (1982)).

In conducting a legal sufficiency review in a parental rights termination case under section 161.001, we view all the evidence in the light most favorable to the finding to determine whether the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which the Department bore the burden of proof. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005); *In re J.F.C.,* 96 S.W.3d at 266. We "must consider all of the evidence, not just that which favors the verdict." *In re J.P.B.,* 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266. We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we should disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *In re J.P.B.,* 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

We must uphold the trial court's ruling against a factual sufficiency challenge if the evidence is such that a reasonable jury could form a firm belief or conviction that grounds exist for termination under Texas Family Code sections 161.001 and 161.206(a). *In re C.H.,* 89 S.W.3d at 18-19. To reverse a case on insufficiency grounds, the reviewing court must set forth the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support a termination finding by clear and convincing evidence. *Id.* at 19. The Texas Supreme Court has emphasized that, in applying the clear and convincing evidence standard, the appellate courts must maintain the respective constitutional roles of juries and appellate courts.

*Id.* at 26. In that regard, "[a]n appellate court's review must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt. . . . While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

The Department must establish both elements—that the parent committed one of the acts or omissions enumerated in section 161.001(1) and that termination is in the best interest of the child. *See* Tex. Fam. Code Ann. §161.001; *In re C.H.,* 89 S.W.3d at 23. Termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987).

Grounds

Subsection Q of section 161.001(1) permits termination when clear and convincing evidence shows that the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." Tex. Fam. Code Ann. § 161.001(1)(Q) (West 2007); *In re A.V.,* 113 S.W.3d 355, 360 (Tex. 2003). We apply subsection Q prospectively. Subsection Q thus "looks at whether the incarcerated parent will be unable to care for the child for two

years from the date the termination petition is filed." *Id.*; *see In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) (also applying subsection Q).[3]

Establishing incarceration for the requisite period does not, by itself, justify termination pursuant to subsection Q. *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex.App.— Houston [1st Dist.] 2002, no pet.); *In re Caballero*, 53 S.W.3d 391, 395 (Tex.App.— Amarillo 2001, pet. denied). The evidence must also show the parent's inability to care for the child for two years from the date of the petition's filing. *In re B.M.R.*, 84 S.W.3d at 818. Thus, as separate requirements, incarceration and an inability to care for the child must each be established by the evidence to support termination. *Id.* Because the parent is incarcerated and unable to care for the child directly, the "care" contemplated by subsection Q "encompass[es] arranging for care to be provided by another." *In re Caballero*, 53 S.W.3d at 396.

On appeal, the father argues the State failed to prove the subsection Q ground on which his parental rights were terminated because the "Department's own evidence, a certified copy of the Felony Plea Memorandum in Appellant's criminal case showed that the conviction did not occur until April 1, 2013, approximately one year and three-

---

[3] Two courts of appeals have determined that the phrase "the petition" in subsection Q's phrase "the date of filing the petition," refers to the Department's original petition, not an amended pleading alleging violation of subsection Q. *In re K.G.,* No. 11-12-00130-CV, 2012 Tex.App. Lexis 7409 (Tex.App.—Eastland Aug. 31, 2012, no pet.) (mem. op.); *In re D.J.H.,* 381 S.W.3d 606, 612-13 (Tex.App.—San Antonio, August 1, 2012, no pet.). The Department's original petition in this case, filed December 12, 2011, did not allege the father's rights were subject to termination under subsection Q; that allegation was added in amended pleadings filed November 19, 2012. Because of the length of the sentence of imprisonment assessed against the father, however, it makes no difference in this case whether we measure the not-less-than-two-year-period from the date of filing of the original petition or that of the amended petition. We therefore need not express an opinion which of the dates should be used for that purpose.

and-a-half months from the date of the filing of the petition in this matter, and just eight days before the final hearing terminating his rights." Thus, he argues, the evidence was insufficient to show he was both convicted and confined or imprisoned and unable to care for the child for not less than two years from the date of the filing of the petition. Rather, he asserts the evidence presented by the Department established "the complete opposite of the fact …."

As we perceive his argument, the father contends that the two-year period referred to in subsection Q is limited to the precise two-year period beginning with the filing date of the Department's petition, so that for subsection Q to be applicable, his conviction must have occurred before the Department filed its petition. The language we have quoted from *In re A.V.* does refer to "two years from the date the termination petition is filed," 113 S.W.3d at 360, but, under the facts in that case, the parent had been convicted before the Department filed its original petition. *Id.* at 357. The same was true in the other case in which the Texas Supreme Court has addressed subsection Q, *In re H.R.M.*, 209 S.W.3d 105. The petition seeking to terminate parental rights there was filed after the parent's conviction. *Id.* at 108. Neither opinion, however, suggests application of subsection Q is limited to those circumstances. Nor does the language of subsection Q contain the requirement that the parent's conviction occur before the filing of the petition. With regard to the two-year period, it simply requires proof of the parent's confinement or imprisonment and inability to care for the child "for not less than two years from the date of filing the petition." That the father in this case was convicted after the Department filed its petition does not render the evidence insufficient.

6

The father also challenges the sufficiency of the evidence of his inability to care for C.C.L. during his imprisonment. The child has been in foster care since his removal shortly after his birth. On the father's guilty plea on April 1, 2013, he was sentenced to imprisonment for a period of twenty years.

Evidence shows the father suffers from a heart condition, diabetes and partial blindness. His girlfriend, Michelle, lives with him and helps care for him. The father has a criminal history and a significant drug history. He admitted he was selling methamphetamine at the time of his arrest. Michelle testified she was with the father the night he was arrested for possession of methamphetamine but denied knowledge of the drugs in his car. After cross examination, Michelle did admit she used methamphetamine in the past and knew the father had sold methamphetamine.

At trial, the father argued C.C.L. should live with Michelle while he is incarcerated. The case worker testified C.C.L. cannot be placed with Michelle because of her history of criminal activity and drug use, and prior child endangerment charges.

Evidence contrary to the trial court's finding under section 161.001(1)(Q) included testimony from Michelle and the father to the effect that he had left $5,500 in an account for support for C.C.L. Michelle also testified she had a job "lined up" to help support C.C.L. and lived in the home owned by the father. She testified she made the mortgage payments on the home and had family that would help her raise C.C.L. The father testified he also had family members who would "look out" for C.C.L. until he was released from prison. Both the father and Michelle completed all of the services set forth in the father's service plan. The father was present at C.C.L.'s birth and had weekly

hour-and-a-half visits with the child. Michelle also testified she "got rid" of "all the druggies that have been around the house" and that she did not use drugs.

Because the father produced some evidence how he would arrange care for C.C.L. during his incarceration, the Department bore the burden of persuasion that the father's arrangement would not satisfy his parental duty to the child. *In re Caballero*, 53 S.W.3d at 396. We find the Department met that burden. Given the evidence of Michelle's close association with the father and her knowledge he was selling methamphetamine, the trial court had good reason to accept the Department's contention and evidence she was not a suitable or legally viable proposed placement for his child. The court was not obligated to accept Michelle's testimony in favor of the placement. *See In re J.P.B.,* 180 S.W.3d at 573 (appellate court must defer to trial court determinations of witness credibility issues that depend on appearance and demeanor). In similar circumstances, other courts have sustained subsection Q grounds. *See In re G.C.,* No. 01-12-00935-CV, 2013 Tex.App. LEXIS 2115 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, no pet.) (mem. op.) (finding subsection Q evidence sufficient when father failed to name another person to care for child after his proposed placement was rejected by Department). The father's testimony his family would "look out" for the child does not render the Department's evidence insufficient. *See In re H.R.M.,* 209 S.W.3d at 110 (*citing In re Caballero*, 53 S.W.3d at 396).

Having reviewed the record, we conclude the evidence, viewed in the light most favorable to the section 161.001(1)(Q) finding, was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that the father knowingly engaged in criminal conduct that has resulted in his (i) conviction of an

offense and (ii) confinement or imprisonment and an inability to care for the child for not less than two years from the date of the filing of the petition. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the section 161.001(1)(Q) finding or was not so significant as to prevent the fact finder reasonably from forming a firm belief or conviction that the elements of subsection Q were shown. Accordingly, we find the evidence was legally and factually sufficient to support the section 161.001(1)(Q) finding.

Best Interests

The father also challenges the trial court's finding that termination of his parental rights to C.C.L. was in the child's best interests. There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008). Among others, the following factors should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment: the child's age and physical and mental vulnerabilities; the frequency and nature of out-of-home placements; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; and whether an adequate social support system consisting of an extended family and friends is available to the child. Tex. Fam. Code Ann. § 263.307(b); *In re R.R.,* 209 S.W.3d at 116.

9

The Texas Supreme Court has set out additional factors that courts can consider when determining the best interest of the child, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976). This is not an exhaustive list, and a court need not have evidence on every element listed in order to make a valid finding as to the child's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *In re C.H.*, 89 S.W.3d at 27.

The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. *Id.* at 28; *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex.App.—Amarillo 2011, no pet.). Furthermore, the best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re N.R.T.,* 338 S.W.3d at 677. The best interest under consideration is that of the child, not that of the parent. *Id., citing In re S.A.P.,* 169 S.W.3d 685, 707 (Tex.App.—Waco 2005, no pet.).

With the foregoing in mind, we review the legal and factual sufficiency of the evidence to support the trial court's finding that termination was in C.C.L.'s best interests.

We have described the evidence of the father's admitted drug dealing. As a consequence of the father's actions, C.C.L. is deprived of an in-person relationship with his father, for a period of time that cannot be known on this record.

The evidence further shows the father[4] admitted at one time he was aware that the mother of C.C.L. used drugs while she was pregnant. He later denied making this statement. When C.C.L. was born, a test showed methamphetamine in his system. Given this evidence, the trial court reasonably could have determined the father at the least condoned behavior that led to injurious consequences for the infant. The evidence of these actions strongly indicates that the existing parent-child relationship is not a proper one.

The father's plan for C.C.L.'s future was his placement with Michelle. Michelle commendably had completed the family plan requirements with the father, desired to have the child, had a suitable and well-kept home, visited with the child weekly with the father and, some evidence showed, had a bond with the child. She and the father testified to the willingness of other family members to help with the child, although neither the capabilities of those family members to be of help nor the propriety of their doing so was explored in testimony. As we have noted, however, there were reasons for the trial court not to view the father's plan for the child's care as feasible. From the

_____

[4] The record also shows the father has two other children, one placed with grandparents and another with an open case with the Department.

testimony, it is unclear that placement with Michelle ever could be accomplished under the Family Code. The child, of course, had never been under Michelle's care, and her ability to meet his needs in the absence of support from the father is subject to doubt on this record.

Just as there were elements of uncertainty in the father's plan for future care of the child, the Department's plan would require changes in the child's life. C.C.L. was one year and four months old at the time of the final hearing and was doing well. But the foster home in which he was living was not a potential adoptive home. The caseworker testified the Department's plan was to place C.C.L. in an adoptive home after termination of the parental rights. Termination of the father's parental rights thus likely will cease the child's contact with Michelle and shortly with his current foster family. The child is still very young, however, and the court reasonably could have reached a firm conviction that the Department's plan carried the greater likelihood of stability and permanency for the child.

Although there was evidence contrary to a finding termination was in the child's best interest, there was strong evidence in favor of that finding. We conclude any evidence that the court could not have credited in favor of its best interest finding was not so significant as to make its finding unreasonable. *See In re J.F.C.*, 96 S.W.3d at 266 (standard for factual insufficiency). The evidence is legally and factually sufficient to support the trial court's finding that termination of the father's parental rights was in the best interests of C.C.L. We overrule the father's second issue.

Ineffective Assistance of Counsel

The father lastly contends his counsel provided ineffective assistance. The Texas Family Code requires the appointment of counsel to represent an indigent parent who opposes the Department's effort to terminate his parental rights. Tex. Fam. Code Ann. § 107.013(a)(1) (West 2009). The Texas Supreme Court has held that this statutory right to counsel "embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003).

According to the father, counsel's performance was so deficient it triggers a presumption that it changed the outcome of the case. *See Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984); *United States v. Cronic,* 466 U.S. 648, 654-55, 104 S. Ct. 2039, 2044, 80 L. Ed. 2d 657 (1984). In evaluating claims of ineffective assistance of counsel in civil parental-rights termination cases, we begin with the standard set forth by the United States Supreme Court for criminal cases in *Strickland v. Washington. In re M.S.*, 115 S.W.3d at 544-45 (*citing Strickland*, 466 U.S. at 687). Under the *Strickland* standard, a parent must show both that (1) his attorney's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced his defense. *Id.* at 545; *Strickland,* 466 U.S. at 684-87.

In its parental rights termination jurisprudence, the Texas Supreme Court has focused on *Strickland's* second prong, holding that an ineffective assistance of counsel claim "requires more than merely showing that appointed counsel was ineffective." *In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). The parent must also show that "counsel's

deficient performance prejudiced the defense." *Id. (quoting Strickland*, 466 U.S. at 687). To show prejudice, the parent "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The father argues his counsel was ineffective in three respects: she failed to challenge, at the final hearing, C.C.L.'s initial removal; she failed to point out to the trial court that the father was not incarcerated or convicted until April 1, 2013, eight days before the final termination hearing; and she signed the proposed order containing an incorrect rendition of the trial court's findings, because the order recited two grounds[5] for termination of the father's rights rather than the one orally pronounced.[6] We cannot agree any of the three instances demonstrate deficient performance by counsel.

As to the father's first complaint, he does not explain how his counsel's failure to challenge, at the time of the final termination hearing, the Department's initial removal of C.C.L. from the hospital constituted deficient performance, or in what manner it prejudiced his defense of the termination proceeding. *See Melton v. Tex. Dep't of Family & Protective Servs.,* No. 03-08-00168-CV, 2010 Tex.App. LEXIS 1352 (Tex.App.—Austin Feb. 25, 2010, no pet.) (mem. op.) (in termination appeal, finding challenges to similar interim orders both unpreserved and ineffective to show reversible

---

[5] The judgment contained both the subsection Q ground rendered by the trial court and an additional ground.

[6] The father notes additional alleged omissions but acknowledges they probably did not affect the outcome of the hearing.

error). Moreover, given the state of the record, counsel well could have concluded that any challenge to the removal would have been futile.

The validity of the father's second complaint is dependent on his initial argument in this appeal, by which he contended subsection Q could not apply to him because he was not convicted until well into the second year following the date the Department filed its petition. Because we have rejected the father's contention, we must also conclude trial counsel was not ineffective for failing to bring the contention to the trial court.

Lastly, we cannot agree counsel's mere agreement to the form of an assertedly improper termination order constitutes ineffective assistance. The record is silent as to counsel's reasons for agreeing to the proposed order's form, and her doing so would not in any event have changed the outcome of the case because the order correctly set forth the trial court's finding as to one predicate ground and as to best interests. Other errant inclusions would not have changed the case's outcome.

For these reasons, we overrule the father's final issue.

Conclusion

Having resolved each of the father's issues against him, we affirm the order of the trial court terminating the father's parental rights to his child, C.C.L.

James T. Campbell
Justice

15